MAXWELL, J., for the Court:
 

 ¶ 1. In October 2000, Martin and Star Pierce married in Mississippi. Martin was enlisted in the United States Navy at the time of the marriage. After being stationed at several different locations around the United States and abroad, the Navy transferred Martin to the state of Washington. Upon gaining residency in Washington in 2007, Martin filed for a divorce from Star. The Washington court granted Martin a divorce, but because it lacked personal jurisdiction over Star, it did not address the distribution of property. On January 11, 2008, Martin filed suit in the Harrison County Chancery Court seeking distribution of the marital property. The chancellor awarded Star $500 monthly permanent alimony; $700 monthly alimony to pay the mortgage, taxes, and insurance on the couple’s Biloxi home; half of Martin’s Thrift Savings Plan; 65% of Martin’s military retirement account that accrued during the marriage; and Martin’s military Survivor’s Benefits Annuity. Finding the chancellor’s award assigning survivor’s retirement benefits to Star is not supported by sufficient factual findings, we reverse and remand.
 

 FACTS
 

 ¶2. Martin completed basic training in the United States Navy before marrying Star, and Star stopped working after the marriage. They have no children together, but Star has a daughter, Kayla, from a previous relationship. During the marriage, the Navy stationed Martin at several locations throughout the United States, and Martin attended various Naval training schools. It is unclear from the record if the Navy prohibited spouses from living at all of these locations. But Martin claimed dependants were at a minimum discouraged from being present while a spouse attended training schools.
 

 ¶ 3. The couple lived together for two out of the three years Martin was stationed in Fallon, Nevada. Star suffers from Crohn’s disease and kidney problems, and while in Nevada, the nearest medical facility was approximately an hour away.
 
 *660
 
 Star claimed she moved back to Mississippi because of the lack of nearby medical treatment. Martin contends Star left Nevada since she could not find a job and missed her family.
 

 ¶ 4. After returning to Mississippi, Star received medical treatment for her Crohn’s disease and underwent surgery for a hysterectomy at Keesler Air Force Base in Biloxi, Mississippi. Martin and Star purchased a home in Biloxi, which Martin visited on several occasions. But only Star and Kayla lived in the Biloxi home. After Star left Nevada, she and Martin never lived in the same location. Martin was stationed for about eleven months in Jacksonville, Florida, and the couple visited each other on weekends. The Navy later stationed Martin in Japan and then sent him to Whidbey Island, Washington.
 

 ¶ 5. Following the couple’s separation in May 2006, the Navy began transferring $1,400 each month from Martin’s income to Star. Martin testified that Star had received approximately $24,000 since the separation. Also, the Navy had inadvertently deposited $4,000 of Martin’s “travel pay” into a joint account. Martin testified that Star used some of this money for bills, but he did not know what she did with the rest. Star claimed she used this money for necessary medicine, groceries, household expenses, and items for Kayla.
 

 ¶ 6. After establishing residency in Washington, Martin filed for divorce. Martin served Star with process, but she did not appear in court. On July 24, 2007, the Washington court granted the divorce. Though the marriage had lasted approximately six years and nine months, both parties claimed they actually lived together less thán three years.
 

 ¶ 7. Martin remarried on November 15, 2007. He met his current wife, Michelle Pierce, while deployed to Japan in 2006. Martin testified he did not engage in a sexual relationship with Michelle until after separating from Star. At the time of trial, Martin and Michelle owned a home in Washington and were expecting their first child.
 

 ¶ 8. After hearing testimony from Martin and Star, the chancellor granted Star use of the home until she remarries or her daughter, Kayla, graduates from high school or moves from the home. He also awarded Star $500 per month in permanent alimony and required Martin to pay an additional $700 per month for the mortgage, taxes, and insurance on the Biloxi home. The chancellor awarded Star 65% of Martin’s military retirement account that had accrued during the marriage and 50% of his Thrift Savings Plan (TSP). Star was awarded her 2004 Ford Focus and ordered to make the remaining payments. The chancellor also ordered Martin to name Star as the beneficiary of his military Survivor’s Benefits Annuity. The chancellor awarded Martin a carburetor kit and a stereo speaker and divided the credit-card debts between both parties. Martin now appeals several of these awards to Star.
 

 STANDARD OF REVIEW
 

 ¶ 9. We will not disturb the findings of a chancellor if supported by substantial evidence “unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.”
 
 Sanderson v. Sanderson,
 
 824 So.2d 623, 626 (¶ 8) (Miss.2002) (quoting
 
 Kilpatrick v. Kilpatrick,
 
 732 So.2d 876, 880 (¶ 13) (Miss.1999)). We review questions of law de novo.
 
 George v. George,
 
 22 So.3d 424, 427 (¶ 4) (Miss.Ct.App.2009).
 

 DISCUSSION
 

 I. Factual Findings and Survivor’s Benefit
 

 ¶ 10. In
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928-29 (Miss.1994), the supreme
 
 *661
 
 court instructed chancellors to evaluate the division of marital property following certain guidelines and to make findings of fact and conclusions of law to support their decisions.
 
 [1]
 

 ¶ 11. Periodic alimony should only be considered when the chancellor determines that one spouse has suffered a disparity of income and standard of living following the property division.
 
 George,
 
 22 So.3d at 428 (¶ 6) (citing
 
 Carroll v. Carroll,
 
 976 So.2d 880, 886 (¶ 12) (Miss.Ct.App.2007)). When awarding alimony, the chancellor must consider the
 
 Armstrong
 
 factors.
 
 [2]
 

 ¶ 12. Martin contends the property division and alimony award as a whole is excessive, in part, because Star’s testimony regarding her monthly income is different from that reported on her Uniform Chancery Court Rule 8.05 disclosure statements. He also claims there is no basis for awarding Star 65% of his military retirement account that had accrued during the marriage or for awarding Star his military survivor’s benefits.
 

 ¶ 13. Following the separation, Star returned to work. At trial, she reported her post-separation income to be $800 per month, with actual take home monthly pay of approximately $628. Star testified her health problems prevent her from furthering her education, and her current employers allow her to miss work when she is sick.
 

 ¶ 14. The chancellor found Star has no earning capacity comparable to Martin, and her income is extremely limited. Though Star testified she works at both McDonald’s and as a substitute teacher, she claimed her take home pay is approximately $628 per month. Star has no retirement savings and has excessive monthly expenses due to her medical problems. The Navy trained Martin in various fields, and he now earns approximately $3,663 per month. Further, Martin has no medical issue limiting his employment opportunities.
 

 ¶ 15. This court does not reweigh the
 
 Ferguson
 
 factors on appeal.
 
 Dickerson v. Dickerson,
 
 34 So.3d 637, 644 (¶ 24) (Miss.Ct.App.2010) (citing
 
 Goellner v. Goellner,
 
 11 So.3d 1251, 1263 (¶ 44) (Miss.Ct.App.2009)). Chancellors must divide the marital estate equitably, not necessarily equally. And under some circumstances an unequal division may be necessary.
 
 Id.
 
 at 645 (¶ 30).
 

 ¶ 16. Here, we do not find the chancellor manifestly erred in considering
 
 *662
 
 the parties’ earning capacities and future needs. But because the chancellor failed to make sufficient factual findings regarding Star’s contributions to Martin’s military retirement account and military survivor’s benefits, we must reverse and remand regarding the property division.
 
 See Lauro v. Lauro,
 
 847 So.2d 843, 850 (¶ 17) (Miss.2003).
 

 A. Survivor’s Benefits
 

 ¶ 17. The chancellor required Martin to name Star as the beneficiary of his military Survivor’s Benefits Annuity. Essentially, this means if Star outlives Martin, she will receive a portion of his monthly retirement pay. Because this benefit is assigned to Star, Martin is unable to provide the same benefit to his current wife or future children. Further, the amount of retirement income Martin would receive each month will be reduced to pay for the survivor’s benefits.
 

 ¶ 18. In
 
 Davis v. Davis,
 
 626 So.2d 111, 113 (Miss.1993), our supreme court affirmed a chancellor’s award of survivor’s benefits to an ex-wife. In
 
 Davis,
 
 the husband was a member of the military at the time of the marriage and remained in the military for another twenty-one years.
 
 Id.
 
 at 112. But in
 
 Davis,
 
 the parties were married for twenty-eight years, much longer than Martin and Star’s relatively short-lived marriage. And in
 
 Davis,
 
 the ex-wife had traveled to five different duty stations with her husband.
 
 Id.
 

 ¶ 19. In
 
 Parker v. Parker,
 
 641 So.2d 1133 (Miss.1994), our supreme court affirmed an alimony award including thirty percent of a profit-sharing plan. The chancellor found that during the twenty-year marriage, the wife worked outside the home for approximately eight and one-half to ten of those years, and she cared for the children during the other years.
 
 Id.
 
 at 1137. The chancellor also found the wife’s retirement contributions were applied to family expenses, rather than invested for her personal benefit.
 
 Id.
 
 at 1137-38.
 

 ¶ 20. While
 
 Davis
 
 and
 
 Parker
 
 both provide support for awarding military surviv- or’s benefits to an ex-spouse, we find our supreme court’s decision in
 
 Crowe v. Crowe,
 
 641 So.2d 1100 (Miss.1994), requires reversal under these facts. In
 
 Crowe,
 
 the chancellor prohibited the husband from removing his wife as the beneficiary of a military survivor’s benefit plan.
 
 Id.
 
 at 1104. The supreme court acknowledged that “our case law does not allow for an ‘automatic’ division of pension property between divorcing spouses.”
 
 Id.
 
 And the court further reasoned it would be error to grant the wife an interest in the husband’s pension without proper factual findings.
 
 Id.
 
 at 1105. The
 
 Crowe
 
 court remanded for the chancellor to determine if the wife had made material contributions to the accumulation of the plan funds.
 
 Id.
 

 ¶21. Not only was the present marriage much shorter than the marriages in
 
 Davis
 
 and
 
 Parker,
 
 but here the chancellor made no findings that Star made any contribution to the military retirement funds. Indeed, the chancellor found the accumulation of Martin’s retirement benefits solely resulted from Martin’s efforts. There is also no finding that Star contributed money to paying family expenses rather than to building her own retirement. But the chancellor awarded Star both the surviv- or’s benefits and 65% of Martin’s military retirement account that had accrued during the marriage.
 

 ¶ 22.
 
 Crowe
 
 mandates that factual findings are required before an award of this type is warranted.
 
 Crowe,
 
 641 So.2d at 1105. Because of the lack of factual findings supporting the military survivor’s benefits-based awards, we reverse the judgment as to these awards and remand this case to the chancery court for further
 
 *663
 
 proceedings consistent with this opinion. We also acknowledge that “[a]limony and equitable distribution are distinct concepts,” which “command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede.”
 
 Lauro,
 
 847 So.2d at 848-49 (¶ 13) (citation omitted). Since property division and alimony awards should be considered together, we also reverse these awards and remand for further consideration by the chancellor.
 
 Id.
 
 at 850 (¶ 17).
 

 B. Use of Home Contingent on Child-Related Event
 

 ¶ 23. The chancellor ordered Martin to pay the house note, including taxes and insurance, until Star remarries or Kayla graduates from high school or leaves the home. Martin contends that terminating his payments on a child-related event converts the payments to a sort of quasi child support instead of alimony, which he claims is impermissible.
 

 ¶ 24. Martin contends hinging this award on a child-related event requires him to pay housing not only for Star, but for her daughter as well. And because Kayla is not Martin’s child, he argues he has no legal duty to provide for her. We note that under the Internal Revenue Code: “A payment will be classified as child support under the Code if the decree or document ‘fixes’ the payment as a sum payable for a child’s support.” Deborah H. Bell, Bell on Mississippi Family Law, § 13.02[1] (2005) (citing I.R.C. § 71(c) (2000)). Furthermore, a payment designated as alimony, but which terminates upon a child-related event, will be treated as child support.
 
 Id.
 
 at § 13.01[l][f] (citing I.R.C. § 71(c)(2) (2000)). This issue has not been addressed by Mississippi appellate courts. However, in
 
 Gates v. Gates,
 
 933 A.2d 102, 108 (Pa.Super.Ct.2007), the Pennsylvania Superior Court confronted a similar issue.
 

 ¶ 25. In
 
 Gates,
 
 the parties divorced and the ex-wife was awarded alimony, which was set to terminate on or before their youngest son’s eighteenth birthday.
 
 Id.
 
 The husband argued the payments would likely be treated as child support because of the termination date.
 
 Id.
 
 The Pennsylvania court agreed and held: “[t]he trial court clearly intended the alimony award to be just that alimony, which is fully deductible under the Internal Revenue Code.”
 
 Id.
 
 (citation omitted). And the Pennsylvania court noted that the child-based contingency would likely result in the support being reclassified as child support, which is not deductible.
 
 Id.
 
 “Such re-characterization would unduly penalize [the husband] and diminish his expendable income in a way unintended by the trial court.”
 
 Id.
 
 at 108-09 (citation omitted). To avoid that action, the court remanded the award for the trial court to clarify its judgment “to more accurately reflect its unmistakable intent.”
 
 Id.
 
 (citation omitted).
 

 ¶26. We find
 
 Gates
 
 instructive, since the same unintended tax consequence is likely in play here. Also, though logically Star’s expenses will decrease once Kayla leaves the home, Martin argues Kayla may not finish high school and may remain in her mother’s home beyond the time she should have graduated. This could result in Martin paying for Star’s housing far longer than the few years contemplated by the chancellor. We point out Martin’s failure to raise this argument, or the tax-based argument, before the chancellor may be deemed as a waiver of both issues.
 
 See, e.g., Amacker v. Amacker,
 
 33 So.3d 493, 498 (¶ 28) (Miss.Ct.App.2009);
 
 Swaney v. Swaney,
 
 962 So.2d 105, 108 (¶ 10) (Miss.Ct.App.2007). But waiver issues aside, because we find reversible error regarding the survivor’s benefits, we must remand the entire property division and
 
 *664
 
 alimony award for reconsideration.
 
 See Thompson v. Thompson,
 
 894 So.2d 603, 607 (¶ 22) (Miss.Ct.App.2004). On remand, the chancellor should avoid triggering any alimony award on a life event of Star’s daughter, since Martin has no legal duty to provide for Kayla’s support.
 

 II. Attorney’s Fees
 

 ¶27. Martin also takes issue with the chancellor’s imposition of attorney’s fees. “An award of attorney’s fees in domestic cases is largely a matter entrusted to the sound discretion of the trial court.”
 
 Lauro v. Lauro,
 
 924 So.2d 584, 591 (¶ 29) (Miss.Ct.App.2006) (citing
 
 Poole v. Poole,
 
 701 So.2d 813, 819 (¶26) (Miss.1997);
 
 Arthur v. Arthur,
 
 691 So.2d 997, 1004 (Miss.1997)). Unless we find the chancellor was manifestly wrong, we will not disturb the attorney’s fees award on appeal.
 
 Lauro,
 
 924 So.2d at 591 (¶ 29) (citing
 
 Bredemeier v. Jackson,
 
 689 So.2d 770, 778 (Miss.1997)). But where we reverse the property division and alimony, the attorney’s fees
 
 may
 
 be revisited on remand.
 
 Gray v. Gray,
 
 909 So.2d 108, 113 (¶ 22) (Miss.Ct.App.2005) (emphasis added) (citing
 
 Lauro,
 
 847 So.2d at 850 (¶ 18)).
 

 ¶ 28. The chancellor awarded Star $2,000 toward her attorney’s fees after considering her financial resources and Martin’s financial ability to pay. Martin argues that reversal of the property division requires reversal of alimony and attorney’s fees. Though the chancellor’s award of attorney’s fees appears reasonable, the chancellor may revisit this issue on remand in light of the reversal of the property division and alimony awards.
 
 See id.; Lauro,
 
 847 So.2d at 850 (¶ 18), 852 (¶ 23).
 

 ¶ 29. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
 

 [1]
 

 . The
 
 Ferguson
 
 factors include: "(1) contribution to the accumulation of property, (2) dissipation of assets, (3) the market or emotional value of assets subject to distribution, (4) the value of assets not subject to distribution, (5) the tax and economic consequences of the distribution, (6) the extent to which property division may eliminate the need for alimony, (7) the financial security needs of the parties, and (8) any other factor that in equity should be considered.”
 
 Hults v. Hults,
 
 11 So.3d 1273, 1281 (¶ 36) (Miss.Ct.App.2009) (citing
 
 Ferguson,
 
 639 So.2d at 928-29).
 

 [2]
 

 . The
 
 Armstrong
 
 factors include: (1) "[tjhe income and expenses of the parties”; (2) "[tjhe health and earning capacities of the parties”; (3) “[tjhe needs of each party”; (4) "[tjhe obligations and assets of each party”; (5) "[tjhe length of the marriage”; (6) "[tjhe presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care"; (7) "[tjhe age of the parties”; (8) "[tjhe standard of living of the parties, both during the marriage and at the time of the support determination”; (9) "[tjhe tax consequences of the spousal support order”; (10) "[fjault or misconduct”; (11) "[wjasteful dissipation of assets by either party”; or (12) “[ajny other factor deemed by the court to be ‘just and equitable’ in connection with the setting of spousal support.”
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278, 1280 (Miss.1993).