LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Brandon Brooks and Dawn Jackson Brooks were married for approximately seven years before being granted a divorce in February 2010 in the Jones County *217 Chancery Court on the ground of adultery. Dawn was awarded custody of the couple’s four children, and Brandon was awarded visitation. Dawn was also awarded the exclusive use of the marital residence until the youngest child turns eighteen years old. Brandon was ordered to pay the mortgage on the house, rehabilitative alimony, child support, and the outstanding medical bills associated with the births of the children.
¶ 2. Brandon now appeals, asserting the chancellor erred in the following findings: (1) the award of child support, (2) the division of property, (3) the award of alimony, (4) the award of attorney’s fees, and (5) the visitation schedule. Finding the chancellor made a clerical error in awarding child support, we affirm the chancellor’s judgment with a modification to the child support based on the correct percentage provided by statute. All other issues are affirmed without change.
FACTS
¶ 8. Brandon and Dawn were married for approximately five years before separating. The couple married while in college. After Brandon finished college, he attended law school while Dawn completed a bachelor’s degree in Mass Communications. Brandon opened a law practice in Jones County, Mississippi, and Dawn worked in his law office. Dawn helped set up the office by making phone calls to line up contract work, designing the letterhead, and decorating the office.
¶ 4. When Dawn was required to be at home more with the children, Dawn’s cousin, Ashley Friend, was hired to work part time at Brandon’s office. Brandon began an affair with Ashley, which ultimately led to Brandon and Dawn’s separation. Brandon and Ashley were expecting a child together when his and Dawn’s divorce was finalized. Brandon and Dawn’s four children were all under the age of five at the time of the divorce.
STANDARD OF REVIEW
¶ 5. “A chancellor’s findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied.” Sanderson v. Sanderson, 824 So.2d 628, 625-26 (¶8) (Miss.2002) (citations and internal quotations omitted). Furthermore, we “will affirm the [child-custody] decree if the record shows any ground upon which the decision may be justified.... We will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interest ] of the child.” Mosley v. Mosley, 784 So.2d 901, 905-06 (¶ 15) (Miss.2001) (quoting Yates v. Yates, 284 So.2d 46, 47 (Miss.1973)).
DISCUSSION
I. CHILD SUPPORT
¶ 6. The chancellor ordered Brandon to pay $958 per month in child support based on his monthly adjusted gross income of $3,686.84. In doing so, the chancellor stated: “Neither party has rebutted the presumption that the statutory child support guidelines are applicable in this case. The percentage of statutory guideline child support for four children is 26%.” The percentage stated by the chancellor is incorrect. The statutorily recommended child support for four children is 24% of adjusted gross income. Miss.Code Ann. § 43-19-101(1) (Rev.2009). The guideline for five or more children is 26%.
*218 ¶ 7. Mississippi Code Annotated section 43-19-101(2) (Rev.2009) states:
The guidelines provided for in subsection (1) of this section apply unless the judicial or administrative body awarding or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-103.
It is apparent from the record that the child-support award of 26% was a clerical error. The chancellor did not make a finding that the statutory guidelines were inappropriate. Instead, the chancellor specifically found that “[n]either party has rebutted the presumption that the statutory child support guidelines are applicable....”
¶ 8. Since the chancellor clearly stated that neither party had overcome the rebut-table presumption that the statutory guidelines applied, we affirm but modify this aspect of the chancellor’s judgment. Applying the statutorily recommended amount of 24% for four children to Brandon’s adjusted gross income of $3,686.84, the correct amount of child support is $885.
¶ 9. In addition to the incorrect percentage being applied, Brandon argues that the chancellor based child support on an incorrect amount of income. The chancellor found Brandon’s monthly adjusted gross income to be $3,686.84. Brandon argues that he correctly reported his adjusted gross income of $3,320 on his Rule 8.05 financial statement. Miss. Unif. Ch. Ct. R. 8.05. Brandon asserts that the chancellor erred in using his income from 2007 because it was an unusually good year for his law practice. In 2007, Brandon’s reported income was $71,583. After considering the evidence, the chancellor found Brandon had understated his income in 2007 by approximately $30,000. As for Brandon’s argument that the chancellor weighed his 2007 income too heavily, Brandon failed to provide income tax returns for 2008 and 2009. The chancellor noted that without proper information, it was “reasonable to base [his] conclusions about Brandon’s current income on the most recent documentation in evidence, which consists of the 2007 income tax returns and Exhibit 4, along with both Dawn’s and Brandon’s own testimony.” Exhibit 4 is a handwritten itemization of expenses. We find this argument without merit as the chancellor properly relied on the evidence presented.
¶ 10. Finally, Brandon argues that the chancellor converted the mortgage payments into additional child support by ordering that he pay the mortgage until the youngest child turned eighteen years old. He cites Pierce v. Pierce, 42 So.3d 658 (Miss.Ct.App.2010) in support of his argument. In Pierce, Martin Pierce was ordered to pay the mortgage on the marital home until his ex-wife, Star, remarried or until Star’s child graduated from high school or left home. Id. at 663 (¶ 23). The couple had no children together, but Star had a daughter from a previous relationship. Id. Martin argued that the award was not logical because Star’s daughter might not finish high school and could remain in the house past the time she should have graduated. Id. at (¶ 26). Also, the award may result in unintended tax consequences because alimony is tax deductible and child support is not. Id. On appeal, this Court found that Martin had waived these issues by failing to raise them before the chancellor. Id. Although the case was remanded on another issue, this Court instructed: “On remand, the chancellor should avoid triggering any alimony award on a life event of Star’s *219 daughter, since Martin has no legal duty to provide for [Star’s daughter’s] support.” Id. at 664 (¶ 26). This case is distinguishable from the case at hand since Brandon does not dispute that he is the father of the children.
¶ 11. We cannot find that the mortgage payment was a form of additional child support. The award in the chancellor’s order was given under the heading, “Equitable Distribution,” and it was ordered after a discussion of the Ferguson factors. The chancellor ordered that when the house is sold, Brandon should receive 60% of the equity, and Dawn should receive 40%. The chancellor reasoned that “Brandon’s larger percentage will reflect his payment of debt, taxes[,] and hazard insurance over the next sixteen or so years.... ” The upkeep and maintenance of the property are Dawn’s responsibility, except for repairs in excess of $1,000, which are the equal responsibility of both parties. Since the mortgage payment was part of the equitable distribution of the assets and Brandon will receive a portion of the equity back when the house is sold, the house payment is not the equivalent of child support. This issue is without merit.
¶ 12. As we find the chancellor made a clerical error in awarding the child support, we affirm but modify the child-support award of $958 and order Brandon to pay child support in the amount of $885 per month. We find that the other arguments raised under this issue are without merit.
II. EQUITABLE DIVISION
¶ 13. Brandon argues the chancellor failed to take the couple’s liabilities into account when dividing the marital property. Brandon also argues the chancellor sought to punish him through the property division for having an affair. ¶ 14. When dividing property, the chancellor should consider the factors set out in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994):
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties[,] and duration of the marriage; and
c. Contribution to the education, training^] or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn[,] or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decreet,] or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
*220 7. The needs of the parties for financial security with due regard to the combination of assets, income[,] and earning capacity; and,
8. Any other factor which in equity should be considered.
¶ 15. Brandon takes contention with the chancellor’s findings in four of the above factors—one, five, six, and seven. He argues the chancellor weighed factor one—contribution to the stability and harmony of the marital and family relationships—too heavily against him because of his affair. The chancellor found that although both parties contributed to the marital and family relationships, Brandon ultimately destabilized the marital and family relationships through his affair and attempts to place blame on Dawn. We find the chancellor appropriately considered the affair, and we find no evidence that the chancellor weighed it too heavily in dividing the property.
¶ 16. As to factor five—tax and other economic consequences, Brandon argues he will suffer severe tax consequences if the mortgage payments are deemed to be child support. This issue is without merit as we have found the mortgage payments not to be part of child support.
¶ 17. As to factors six and seven— the extent to which property division may eliminate periodic payments and other potential sources of future friction between the parties and the needs of the parties for financial security, Brandon argues the chancellor’s findings left him with insufficient funds to support himself. He argues Dawn does not need to rely heavily on him for financial support because she has a college degree and can work. He suggests Dawn should work because she “enjoys waitressing, washing airplanes[,] and working part-time.” The parties agree it is not feasible for Dawn to return to her part-time job in Brandon’s law office given the divorce and the presence of his paramour in the office. The chancellor found Dawn was afforded great flexibility while working in Brandon’s law office, and it is unlikely she would find another job that allows such flexibility.
¶ 18. Brandon contends that his mother could keep the children while Dawn works. However, there was no testimony that Brandon’s mother was willing or able to do so. Brandon asserts his testimony was sufficient to show that his mother could care for the children. The testimony he cites for this proposition is as follows:
Q. Before you and Mrs. Brooks separated, who provided the baby-sitting services for the children?
A. My mother.
Q. And how often would your mother keep the children for y’all?
A. She would keep them a minimum of four days a week, a lot of weeks five, and I would say a good—at least one night overnight, maybe two—
Q. Okay.
A. —some weeks.
¶ 19. We find Brandon’s testimony as to his mother’s willingness to care for the children prior to the separation falls short of providing proof of available childcare after the divorce. We find all of Brandon’s arguments regarding the equitable distribution of property are without merit.
III. ALIMONY
¶ 20. The chancellor ordered Brandon to pay $325 per month in rehabilitative alimony from March 1, 2010, until December 31, 2013. Brandon argues that he is unable to pay this amount. He also argues rehabilitative alimony is unnecessary as Dawn is able to work. Brandon cites to Dawn’s past work experience as an intern with Governor Haley Barbour’s *221 office, a marketing employee at Howard Industries, a waitress, and an airplane washer as evidence of her ability to find employment.
¶ 21. “ ‘Rehabilitative periodic alimony’ is an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim.” Hubbard v. Hubbard, 656 So.2d 124, 130 (Miss.1995). When awarding alimony, the chancellor should consider the Armstrong factors. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). The chancellor should also consider “the reasonable needs of the wife and the right of the husband to lead as normal a life as possible with a decent standard of living.” Gray v. Gray, 562 So.2d 79, 83 (Miss.1990).
¶ 22. Brandon takes issue with factor one from Armstrong — the income and expenses of the parties. Armstrong, 618 So.2d at 1280. Brandon argues that rather than considering the evidence, the chancellor instead awarded alimony as a means of punishing him for the adultery. The chancellor found that Dawn could not meet her expenses without assistance from Brandon. Even working part time, she would not be able to meet her obligations. Further, we agree with the chancellor’s finding that Brandon failed to show evidence that he was unable to pay alimony. In awarding the alimony, the chancellor noted:
... Brandon, who has been paying the court-ordered support since June 22, 2009, has been able to pay support to Dawn in the amount of $250 per week, plus the house note, plus household expenses, without any increase in debt. Exhibit 2 shows debt only for the home mortgage, a car note for a vehicle Brandon purchased after the separation, and a student loan. Since neither party has reported any sizeable cash on hand, it is obvious that Brandon could manage to pay Dawn’s support from either of only two sources: current income; or newly-acquired debt. Since he reports no new debt the conclusion is inescapable that Brandon has been paying Dawn from current income, and that he is managing to pay his other expenses in like manner. In addition, Brandon testified at trial that he would be willing to pay the house note for Dawn and the children’s benefit if he could have extra visitation, which the court finds to be a curious position for a person who claims to be unable to meet his expenses with the amount of income he has.
¶ 23. We find the chancellor’s decision was supported by the evidence. This issue is without merit.
IV. ATTORNEY’S FEES
¶ 24. Brandon was ordered to pay Dawn’s attorney’s fees of $3,498 plus interest of 6% per annum, payable at $150 per month.
¶ 25. When awarding attorney’s fees, the chancellor must consider the following:
The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
McKee v. McKee, 418 So.2d 764, 766 (Miss.1982).
¶ 26. Brandon argues that he is unable to pay Dawn’s attorney’s fees. And, again, he argues the award was a punishment for his adultery. He argues Dawn was capa *222 ble of paying her own attorney’s fees. As discussed above, we cannot find that the chancellor abused his discretion in determining the parties’ income and expenses. The chancellor found Brandon was able to pay Dawn’s attorney’s fees. At the time of the hearing, Dawn had been unable to make any payments toward her attorney’s fees. We find this issue is without merit.
V. VISITATION
¶27. Brandon and Dawn agreed that Dawn would have custody of the children; however, Brandon argues the visitation schedule set by the chancellor unnecessarily restricts his visitation with the children. He argues that he should have “extensive visitation.” The chancellor’s opinion adopts the temporary order setting visitation, which states that Brandon should have the children the first, second, and third weekends of each month. He also has visitation on alternating holidays, half of the summer and spring breaks, and any other reasonable time agreed to by the parties. Brandon argues the chancellor set the schedule as punishment for his affair and based on Dawn’s false testimony about him.
¶ 28. Dawn and her mother testified Brandon was a good father. However, several incidents occurred during the marriage that raised concerns. Dawn testified Brandon kicked in the door of the marital home on several occasions. She testified that she had called the police three or four times when he kicked in the door, but there were additional times she did not call. She testified that on one occasion after kicking in the door, he pulled out a gun. Brandon alleges it was Dawn’s mother who pulled out the gun, and he took it from her to gain control of the situation. Dawn’s mother testified she had the gun in her possession in a holster with a zipper on it, and Brandon took the gun from her and took it out of the holster. Brandon was in possession of the gun when the sheriffs department arrived.
¶ 29. Brandon was charged with driving under the influence in 2009. Dawn testified that Brandon drove with the children in the car while his driver’s license was suspended. Brandon testified that he was unaware his license was suspended and that this incident brought no harm to the children. Dawn testified Brandon left the children with others to take trips to the Mississippi Gulf Coast and to go to a Halloween party. Also, Brandon admitted he had allowed his girlfriend to be present while he had visitation with the children. He admitted this was inappropriate. Brandon has complained that Dawn denied him some of his visitation with the children; however, Dawn also cited occasions where Brandon had failed to return the children to her in a timely manner.
¶ 30. Brandon called Dr. Carl Dickerson to testify regarding visitation. Dawn objected based on marital privilege because Dr. Dickerson was their marriage counselor before the divorce. The chancellor sustained the objection. By way of proffer, Dr. Dickerson testified that during the couple’s eight to ten sessions, Dawn did not complain about Brandon’s parenting skills. Brandon asserts the chancellor should have considered this and granted him more liberal visitation.
¶ 31. “Visitation is a matter within the chancellor’s sound discretion.” Gilliland v. Gilliland, 969 So.2d 56, 72 (¶ 59) (Miss.Ct.App.2007) (citing Mixon v. Mixon, 724 So.2d 956, 961 (¶15) (Miss.Ct.App.1998)). “The chancellor is charged with fashioning a visitation schedule that is in the best interests of the children, and the chancellor’s visitation decision is afforded great deference by this Court.” Id. We cannot find the visitation schedule set by the chancellor to be unnecessarily restrictive. The chancellor considered the best inter *223 ests of the children in setting visitation. We can find no abuse of discretion. This issue is without merit.
CONCLUSION
¶ 32. The chancellor made a clerical error in awarding child support based on the statutory guidelines in the amount of 26% of Brandon’s adjusted gross income. The correct amount, however, for four children according to the statutory guidelines is 24%. We affirm the child-support award, but we modify the judgment to correct the percentage used by the chancellor. The chancellor determined that Brandon’s adjusted monthly gross income was $3,686.84. The award of $958 in child support to be paid by Brandon is changed to $885 per month, which represents 24% of Brandon’s adjusted monthly gross income of $3,686.84. All other issues are affirmed without change.
¶ 33. THE JUDGMENT OF THE JONES COUNTY CHANCERY COURT IS AFFIRMED AS MODIFIED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.