Andrew P. **GATES**, Appellant

v.

Nancy J. Reed **GATES**, Appellee.

Superior Court of Pennsylvania.

Argued June 26, 2007.
Filed Sept. 7, 2007.

Kimberly M. Kubista, Clearfield, for appellant.

Toni M. Cherry, DuBois, for appellee.

BEFORE: ORIE MELVIN, TAMILIA and JOHNSON, JJ.

**OPINION BY TAMILIA, J.:**

¶ 1 Andrew P. Gates appeals from the October 10, 2006, Decree awarding Nancy J. Reed Gates the majority of the couple's marital estate, alimony in the amount of $4,000 per month for an indefinite term extending to the 18th birthday of the couple's minor son, and a total of $27,000 in counsel fees.

¶ 2 The Gates were married on May 13, 1995. Prior to their marriage, the couple entered into a valid and enforceable antenuptial agreement dated May 12, 1995. Record, No. 37, Order Re: Prenuptial Agreement. The agreement shielded approximately $1 million of appellant's income generating assets, including any appreciation of these assets during the marriage, from being inventoried in the marital estate. At the outset of the marriage, appellant was an attorney and partner in his own established law practice, while appellee was employed as an auditor for the United States Department of Agriculture.

¶ 3 On August 19, 2005, appellant filed a complaint seeking a divorce, equitable distribution of the marital estate, and sole legal and physical custody of the couple's minor son. Record, No. 1. Notably, the trial court found appellant, sometime after filing his tax return in April of 2006, received a $2 million distribution in income generating assets from a testamentary trust his deceased mother had settled. After receiving affidavits of consent from both parties, the trial court entered a divorce Decree dated May 15, 2006. Shortly thereafter, the trial court held a custody hearing and, after considering the evidence presented, entered an Order dated October 9, 2006, awarding shared legal custody to both parties and primary physical custody to appellant. The trial court issued the detailed Order subject to this appeal the

next day setting forth the rationale it employed in arriving at its disposition.

¶ 4 Appellant filed a notice of appeal with this Court and complied with the trial court's subsequent Rule 1925(b) directive. *See generally,* Pa.R.A.P. 1925, **Opinion in Support of Order.**[1] Appellant now raises the following issues for our consideration:

    I.   Whether the trial court abused its discretion and committed various errors of law in awarding Wife, after a 10 year marriage, 100% of the marital equity?

    II.  After the trial court awarded Wife 100% of the marital equity, whether it committed various errors of law and/or abused its discretion in awarding additional alimony at $4,000.00 per month for a period of 11 years (a total of $528,000.00)?

    III.  Whether the trial court erred as a matter of law and/or abused its discretion in fashioning an alimony award for Wife which would require Husband to utilize the principal of an inheritance which he received after the parties' separation?

    IV.  Whether the trial court erred as a matter of law and/or abused its discretion by linking the term of the alimony to the length of the time until the parties' minor child reaches the age of majority?

    V.  Whether the trial court erred at law and/or abused its discretion in awarding Wife counsel fees given: a) the substantial monies she received in equitable distribution; and b) Wife's counsel's billable time was related to criminal defense and custody matters?

Appellant's brief at 16.

■ ¶ 5 Appellant first challenges the award of equitable distribution. Our standard of review requires us to determine whether an abuse of discretion has occurred. *Wang v. Feng,* 888 A.2d 882, 887 (Pa.Super.2005). Our scope of review requires us to measure the circumstances of the case against the objective of effectuating economic justice between the parties in discerning whether the trial court misapplied the law or failed to follow proper legal procedure. *Id.*

■ ¶ 6 In fashioning an equitable distribution award, the trial court must consider, at a minimum, the eleven factors set forth in 23 Pa.C.S.A. § 3502, **Equitable division of marital property,** (a) **General rule.** These factors require the trial court to consider the relative economic positions of the parties and the nature of the parties' relationship. *Id.* The section 3502 factors are not a simple formula, rather they serve as a guideline for consideration. *Wang, supra* at 888. The facts of a particular case mandate how the section 3502 factors will be applied.

¶ 7 Appellant contends the court abused its discretion in awarding appellee "100% of the marital equity" by failing to consider properly all of the relevant statutorily prescribed factors in light of the evidence presented. Appellant's brief at 22. Appellant argues that while there are reported cases where this Court has affirmed equitable distribution awards of 100% of a marital estate, these awards were premised on the doctrine of equitable reimbursement. *See Wang, supra* at 888. He also contends the trial court erred in concluding he received income in the form of medical, retirement, insurance and other benefits from his law firm. *Id.* at 24.

---

**1.** Appellant also filed a notice of appeal from the October 9, 2006, custody Order. The appeals were consolidated by Order of November 22, 2006, but appellant has chosen not to pursue his appeal from the custody determination. Record, No. 73; appellant's brief at 18.

¶ 8 It is clear from appellant's argument that he is confusing the term "equity" with "estate." The trial court did not award appellee 100% of the marital estate—appellant received a number of marital assets in the distribution including a vehicle valued at approximately $15,000, two IRA accounts, the funds in a checking account, and marital household furnishings. Decree Resolving All Economic Issues, Williamson, J., 10/10/06, at 7; *see also* Record, No. 47, Plaintiff's Inventory, Exb. 2; Record, No. 66, Concise Statement, at ¶ I, i. We are uncertain as to what appellant is referring when he uses the term "equity" but it is apparent appellant is urging us to simply reweigh the section 3502 factors in the hope the scales will tip in his favor the second time around. We can not do so in the absence of an abuse of discretion, which appellant has failed to demonstrate. *Wang, supra* at 887.

¶ 9 As to the trial court's treatment of appellant's employment benefits, or lack thereof, the court noted: "Husband has no retirement plan, receives health insurance from Clearfield County, and presumably would have available to him all medical, retirement, insurance, or other benefits he would deem appropriate through his law partnership." Decree at 3. The trial court clearly recognized appellant was not receiving full benefits when the inventories were filed. *Id.* Further, we do not find the trial court abused its discretion by simply recognizing appellant's law firm could begin funding retirement and insurance benefits pursuant to appellant's directive at any time, especially given the fact that the substantial value of appellant's partnership interest was not considered or mentioned by the trial court in fashioning the equitable distribution award. Accordingly, appellant's argument fails.

¶ 10 The next three issues raised by appellant challenge the award of alimony. Our standard of review over an alimony award is an abuse of discretion. *Teodorski v. Teodorski,* 857 A.2d 194, 200 (2004), *quoting Moran v. Moran,* 839 A.2d 1091, 1096–1097 (Pa.Super.2003).

We previously have explained that 'the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met.' Alimony 'is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.' Moreover, 'alimony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.'

*Id.* (emphasis in original).

In determining whether alimony is necessary, and in determining the nature, amount, duration and manner of payment of alimony, the court must consider numerous factors including the parties' earnings and earning capacities, income sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage.

*Teodorski, supra* at 200, *quoting Anderson v. Anderson,* 822 A.2d 824, 830–831 (Pa.Super.2003); 23 Pa.C.S.A. § 3701, *Alimony.*

¶ 11 Appellant's first contends the trial court abused its discretion in awarding appellee $4,000 in monthly alimony by erroneously considering all of the relevant

statutorily prescribed factors in light of the evidence presented. *See* 23 Pa.C.S.A. § 3701(b), **Factors relevant.** Appellant maintains the court did not "consider the reasonable needs of Wife and how her needs were affected or reduced by the one hundred (100%) percent equitable distribution award to Wife." Appellant's brief at 28. Appellant further argues the award was based on personal animus towards him and is speculative in nature because it is based, in part, on the trial court's estimation that appellant would earn approximately $80,000 to $90,000 per year from the income generating assets he received through the trust distribution after his mother's death. *Id.* at 28–29.

¶ 12 In attempting to obtain full custody over the couple's minor child, appellant vigorously argued appellee was mentally infirm and incapable of caring for the child. The trial court, after observing appellee during the proceedings, was "absolutely convinced that Mother is presently incapable of any gainful employment." Decree at 3. The trial court found the Gates had lived a privileged lifestyle while married, which appellant easily was able to provide in rural Pennsylvania with his six figure income and over $1 million in assets. Trial Court Opinion (titled Statement of Reasons Pursuant to Pa.R.A.P. No.1925(a)), Williamson, J., 11/13/06, at 2, ¶ b. The trial court also relied on the fact that pursuant to the custody Order appellee would be providing "free child care to [appellant], the primary custodial parent, until after the evening meal each day" and, "the parties' child is entitled to enjoy the same style of living at his mother's home that he does at his father's home." *Id.* at 3, ¶ h. As for appellant, the trial court found he would be able to afford approximately $48,000 per year in alimony payments given his wealth.

¶ 13 We find no abuse of discretion in the award of alimony to appellee. In the equitable distribution, appellee received a $147,768 payment for the marital residence, two vehicles worth approximately $23,000, a share of stock with no par value, and her own federal pension. Decree at 7, ¶ 2–3. At the time of the proceedings, appellee had no earning capacity, no separate income generating assets, and was receiving just $1,214 per month from a disability plan. *Id.* at 3–4.

¶ 14 It is readily apparent from the evidence of record appellee can not maintain the lifestyle to which she had become accustomed and honor her obligations to support the couple's son with a one-time payment of $147,768 and approximately $14,568 in income per year. The trial court correctly concluded alimony was necessary to serve the interests of economic justice, both for appellee and the couple's child, and that these interests were not going to be served over a lengthy period of time by a single distribution of less than $200,000. *See Teodorski, supra* at 200, *citing Anderson, supra* at 830–831.

¶ 15 Moreover, we do not find an abuse of discretion in the amount of alimony awarded. While the trial court's estimate of how much income appellant's recent receipt of the trust distribution would generate was speculative, as the trial court concedes, the trial court retained jurisdiction over the award so it would be able to review the matter further after appellant filed his tax return for 2006 to assure the performance of these assets tracked the estimate. Decree at 6; *see also* 23 Pa. C.S.A. § 3701, **Alimony,** (b)(4) **Factors relevant** (providing that a trial court shall consider the expectancies and inheritances of the parties in fashioning an alimony award). Furthermore, the court's estimate was reasonable. The court estimated appellant would earn approximately

$80,000 to $90,000 from the $2 million in assets he received from the trust—which works out to a four to four-and-a-half percent (4%–4.5%) return. Generally, even the most conservative investments generate yields in that range.

¶ 16 To summarize, appellee will now have an annual income of approximately $62,568, including alimony, with an asset reserve of less than $200,000, subject to future adjustment. Given the relative economic positions of the parties, the lifestyle to which appellee was accustomed, and appellee's responsibilities for the couple's child, the trial court's award unquestionably was necessary to effectuate economic justice. *Teodorski, supra* at 200, *citing Anderson, supra* at 830–831.

¶ 17 Appellant next contends the court erred in awarding alimony in an amount requiring him to "utilize the principle of his inheritance as if it were income contrary to well-established case law." Appellant's brief at 31, *citing Humphreys v. DeRoss,* 567 Pa. 614, 790 A.2d 281 (2002) (holding that the corpus of an inheritance is not income for purposes of calculating a parent's child support obligation).

¶ 18 Appellant's contention is spurious. He concedes the most recent tax returns considered by the trial court showed his annual income has ranged from $91,445 to $126,967. Appellant's brief at 32. When this amount is coupled with the court's reasonable estimate of $80,000 to $90,000 being generated annually from the assets received from the trust distribution, these figures climb to a range of $171,445 to $216,967.

¶ 19 Appellant has no other children, no former spouses, or any other family to support. In addition, he has approximately $1 million dollars in assets he owned prior to the marriage, which were shielded by the antenuptial agreement. In sum, there is no evidence appellant's $48,000

per year obligation to appellee will require him to invade the corpus of his inheritance from the trust. Indeed, appellant can easily meet this obligation while still earning a six-figure income and maintaining a net worth in excess of $3 million, all the while living in a rural community. Thus, even if we would find appellant's reliance on *Humphreys* is appropriate, which it clearly is not, the evidence overwhelmingly suggests the burden created by the alimony award should never force appellant to invade the corpus of his trust distribution to meet his obligation.

¶ 20 Appellant next contends the trial court erred in awarding alimony "for an indefinite period, to expire at the latest on December 12, 2017, the child's eighteenth birthday" due to the fact that the Internal Revenue Service will more than likely treat the alimony payments as disguised child support, which, unlike alimony payments, is non-deductible to appellant because the alimony award, as crafted by the trial court, terminates upon a "contingency involving the child." Appellant's brief at 33, *citing* 26 U.S.C. § 71, **Alimony and separate maintenance payments,** (c)(2)(A) **Payments to support children.**

¶ 21 Appellee concedes the trial court's alimony award must be amended. Appellee's brief at 16–17, *citing Isralsky v. Isralsky,* 824 A.2d 1178, 1190 (Pa.Super.2003). We agree. The trial court clearly intended the alimony award to be just that—alimony, which is fully deductible under the Internal Revenue Code. 26 U.S.C. § 215, **Alimony, etc., payments,** (a) **General rule.** The contingency in the alimony award, however, likely will result in the re-characterization of the payments as child support, which is nondeductible. *See* 26 U.S.C. § 71(c)(2)(A). Such re-characterization would unduly penalize appellant and diminish his expendable income in a

way unintended by the trial court. *See Isralsky, supra* at 1190. Accordingly, we must remand so the trial court can clarify its alimony award by eliminating this clerical error to more accurately reflect its unmistakable intent. *See id.*

▮ ¶ 22 Finally, appellant contends the trial court erred in awarding appellee a total of $27,000 in counsel's fees. Appellant contends, more specifically, that "There are a number of cases which show that with a substantial distribution award such as in the current case, counsel fees are inappropriate."[2] Appellant's brief at 37. Appellant further states that some of the counsel fees awarded by the trial court were for work done in connection with the custody of the couple's minor child and criminal charges appellee had incurred. *Id.*

▮ ¶ 23 Inasmuch as appellant challenges the award of counsel fees, our standard of review is, once again, an abuse of discretion. *Busse v. Busse,* 921 A.2d 1248, 1258 (Pa.Super.2007). Furthermore:

The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another.

Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

*Busse, supra* at 1258, *quoting Teodorski, supra* at 201 (additional citation omitted); *see also* 23 Pa.C.S.A. § 3702, **Alimony pendente lite, counsel fees and expenses.** Counsel fees are only to be awarded upon a showing of need. *Busse, supra* at 1258, *citing Teodorski, supra* at 201. In essence, each party's financial considerations dictate whether such an award is appropriate. *Id., citing Plitka v. Plitka,* 714 A.2d 1067, 1070 (Pa.Super.1998).

¶ 24 Appellee, on an annual income of approximately $14,568, was pitted against a multimillionaire adversary with a six figure annual income in the proceedings below. Appellee submitted an itemized statement showing she had incurred approximately $42,802.50 in counsel fees and another $42,817.50 in cost advances in litigating this case. The trial court awarded appellee approximately 32% of these expenses. Although the bill for services rendered by appellee's counsel does include suspect notations indicating appellee's attorney was performing services for appellee in connection with criminal proceedings, and these services unquestionably should have been itemized in another bill, the record indicates the criminal proceedings resulted from appellee and appellant's behavior during their acrimonious divorce. Furthermore, the trial court stated that it "required Husband to pay only that portion of Wife's counsel fees which [it] found reasonable and directly related to the divorce litigation." Trial Court Opinion at 3–4, ¶ n. Given the percentage of expenses actually awarded to appellee, we have no reason to doubt the veracity of this statement. Finally, while appellee re-

**2.** *See Fexa v. Fexa,* 396 Pa.Super. 481, 578 A.2d 1314, 1320 (1990) ("The trial court's decision that appellant had or would receive through equitable distribution sufficient assets to pay her own counsel fee was supported in the record. We find no abuse of discretion.") (citation omitted); *Fitzpatrick v. Fitzpatrick,* 377 Pa.Super. 268, 547 A.2d 362, 369 (1988) (reversing an award of counsel fees without stating the amount of cash the appellee was going to receive through the equitable distribution award).

ceived a cash payment of $147,768 to compensate her for the distribution of the marital home to appellant, to our knowledge this cash payment is the only readily liquid asset she possesses. We can not conclude receipt of this payment alone justifies ignoring the obvious needs of appellee and the relative financial positions of the parties. We discern no abuse of discretion in the trial court's award of counsel fees. *Busse, supra* at 1258.

¶ 25 Summarily, the trial court correctly balanced the equities and relative positions of the parties in crafting the equitable distribution and awards of alimony and counsel fees. These awards allow appellee to maintain the lifestyle to which she was accustomed while still allowing her to care for the couple's young child when necessary. Appellant will be able to maintain a sizeable income and will also enjoy the fruits of millions in assets not subject to the marital estate. We remand this case for the limited purpose of having the trial court eliminate the contingency in the alimony award so as to reflect the trial court's unmistakable intent.

¶ 26 Case remanded for modification of the alimony award in a manner consistent with this Opinion; Decree affirmed in all other respects.

¶ 27 Jurisdiction relinquished.