J-S31003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| K.F., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| A.F., | |
| Appellant | No. 1693 MDA 2015 |

Appeal from the Decree September 3, 2015
In the Court of Common Pleas of York County
Civil Division at No(s): 2009-FC-001569-02, 2009-FC-001569-15

BEFORE:  SHOGAN, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 03, 2016**

Appellant, A.F. ("Wife"), appeals from the divorce decree entered on September 3, 2015, which made final the July 24, 2015 order denying Wife's exceptions to the Divorce Master's report and recommendations. [1]  After careful review, we affirm.

In its July 24, 2015 order, the trial court adopted the Master's findings of fact:

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1] The entry of a divorce decree is a prerequisite to an order for alimony or equitable distribution of property.  **Mensch v. Mensch**, 713 A.2d 690, 691 (Pa. Super. 1998) (citations omitted).  Therefore, Wife's notice of appeal, filed on October 1, 2015, is timely because the July 24, 2015 order was interlocutory until the September 3, 2015 divorce decree was entered. **Uhler v. Uhler**, 594 A.2d 688, 689 n.1  (Pa. Super. 1991).

1. [Appellee, K.F. ("Husband") is] an adult individual presently residing [in] Lancaster, PA 17601. Husband was born on 1974 and was forty years of age at the time of the hearing.

2. Husband is in good health.

3. [Wife] is [A.F.], an adult individual presently residing [in] Lancaster, PA 17603. Wife was born on 1970 and was forty-three years of age at the time of the hearing. She was born in Mexico, but is now a citizen of the United States.

4. Wife is in good health; she recently had nodules removed from her thyroid, but they were benign. She does not suffer from any after-effects that interfere with her employment.

## Marriage, Separation and Support

5. The parties were married on December 30, 2004 in Arizona. This was the second marriage for Husband and the first marriage for Wife. Husband's first marriage ended in divorce.

6. The parties separated on September 4, 2009.

7. Wife was served with a copy of the Complaint by certified mail on October 1, 2009.

8. The parties are the parents of one minor child [("Child")], who was born in 2006. The parties share custody of [Child] equally. Husband has a fourteen-year-old child from a prior relationship. Wife also has fourteen-year-old twins from a prior relationship.

9. Husband pays Wife $3,200 per month as unallocated support for Wife and [Child], effective December 18, 2009. Stipulation 7 and Exhibit P-1. Husband pays $350 per month in support for his fourteen-year-old child. Wife does not receive child support for the twins; their father is believed to be located in Mexico. Stipulation 2.

## Education and Employment

10. Husband obtained his Bachelor of Science degree in Electrical Engineering Technology from Penn State University in 1996. Stipulation 4.

11. When the parties married, Husband was employed by Thompson Displays America in Mexico. Husband earned $111,064 (gross) from his employment in 2004. Exhibit P-5.

12. The parties relocated to California in December 2005. Husband continued to work for the same employer until mid-2006.

13. Husband and Wife started their own business in 2006 making stone veneer for residential construction. The business was not successful.

14. Husband went to work for the Imperial County School District to supplement income from the veneer business. He worked there for one year and approximately seven weeks. See Exhibit P-8.

15. Husband is currently employed at Dawn Food Products, Inc. as an executive. He has been with the company since 2008. He was hired as an engineering manager at a facility in south-central Pennsylvania, so the parties relocated to York County.

16. Husband currently earns $155,000 per year, not including his annual performance bonus. Husband's performance bonus in 2013 was $14,000. Stipulation 4.

17. Wife has the equivalent of an accounting degree that she earned in Mexico and she recently graduated from a program at York Technical Institute (Y.T.I.) with a certification in medical coding and billing. Stipulation 4.

18. Wife had worked as an accountant for a group of gasoline stations in Mexico for about five years when the parties married.

19. Wife did not work outside the home after the parties moved to the United States in 2005, but assisted Husband with the operation of the stone veneer business.

20. Wife found employment as a book-keeper for Shell's Disposal & Recycling in 2009. She initially worked full-time, but cut back to about six hours per day when she started taking classes at Y.T.I. She earned $11 per hour with no fringe benefits.

21. Wife earned $11,696 (gross) from employment in 2011 and $19,851 (gross) in 2012. Exhibit D-5.

22. Wife began working for Southeast Lancaster Health Services on March 27, 2014. She earns $11 per hour for a forty hour week. Health insurance is available to her through employment; she does not currently participate in any retirement plan. Stipulation 6 and Exhibit D-6.

**Marital property and debts**

23. Neither party brought any significant asset to the marriage.

24. The parties owned the following marital property when they separated:

a. 2008 Toyota Highlander retained by Husband that was not valued but distributed without set-off. Stipulation 8. The Highlander was financed, and Husband has paid the loan since separation.

b. 2009 Dodge Cirrus retained by Wife that was not valued but distributed without set-off. Stipulation 8.

c. PNC Bank checking account with a minimal balance retained by Husband.

d. PNC Bank savings account #4925. The balance in this account on the date of separation is unknown, but Husband acknowledged that he withdrew $15,000 from this account on September 1, 2009 in anticipation of separation. Stipulation 10.

e. Husband's CalPers retirement account, with accumulated employee contributions and interest in the amount of $6,950.52 as of June 30, 2012. Stipulation 11. This account accrues interest at the rate of 6% per annum. Exhibit P-8.

f. Husband's Prudential Roth IRA account with a balance of $14,639 as of September 30, 2013. Stipulation 12.

g. Wife's Prudential Roth IRA account with a balance of $13,656 as of June 28, 2013. Stipulation 12.

h. Miscellaneous household goods and other personal property not listed above that were distributed between the parties without set-off.

25. The parties had no marital debts that were disclosed to the master at the time they separated, other than the automobile loan referenced above.

**Post-separation events**

26. Husband made direct support payments in the aggregate amount of $3,566 to Wife between the date of separation and December 18, 2009 (the effective date of the support order). Exhibit P-6.

27. Husband made additional direct payments to Wife in the aggregate amount of $9,444 between December 29, 2009 and March 15, 2010. Exhibit P-6.

28. Husband did not receive credit against support arrears for the $9,444 paid directly to Wife. …

29. Since the parties separated, Husband has begun contributing 10% of his salary to the Dawn Foods Profit Sharing Plan (Exhibit P-7) and Wife has acquired a 2006 Dodge Stratus. This is the only non-marital property disclosed to the master.

Order, 7/24/15, at 1 (incorporating by reference the Master's Report and Recommendation, 9/22/14 at 2-7) (footnote omitted).

The Master concluded that Wife should not be awarded alimony, and Wife filed timely exceptions. On July 24, 2015, the trial court denied Wife's exceptions, and a final decree in divorce was entered on September 3, 2015. This timely appeal followed. Both Wife and the trial court have complied with Pa.R.A.P. 1925(b).

On appeal, Wife argues that the trial court erred when it failed to award alimony based on the totality of the circumstances. Wife's Brief at 4 (unnumbered). Our standard of review over alimony determinations is abuse of discretion. ***Gates v. Gates***, 933 A.2d 102, 106 (Pa. Super. 2007).

> We previously have explained that the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

***Id***. (quotation marks and citation omitted).

Additionally, there is a non-exhaustive list of factors that must be considered when determining whether alimony is necessary:

> **(a) General rule.--**Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary.
>
> **(b) Factors relevant.--**In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:
>
> > (1) The relative earnings and earning capacities of the parties.
> >
> > (2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. § 3701(a) and (b).

Here, Wife asserts that the trial court erred and abused its discretion because it "focused on one factor as the conclusive and deciding factor in this matter as to whether or not to award alimony, that being the length of the parties' marriage" under 23 Pa.C.S. § 3701(b)(5). Wife's Brief at 10 (unnumbered). Wife claims that the difference in the parties' incomes, her financial responsibilities for her older children, and her feelings of being "held hostage" in Pennsylvania "should have been more carefully considered by the Divorce Master and the trial court." *Id*. at 13. We are constrained to disagree.

The trial court addressed Wife's argument as follows:

Husband has worked outside the home throughout the marriage and has the same job now that he had before the parties separated. Husband earns between $155,000.00 to $169,000.00 per year as a corporate executive.

Wife grew up in Mexico where she earned a post-secondary education degree in accounting and worked as an accountant for a string of gas stations for several years. During the marriage she helped run the parties' fledgling business, did not, for the most part, work outside the home after that

- 8 -

business failed, and just recently has obtained her medical billing certification and employment in that field.

Wife earns approximately $23,000.00 per year working 40 hours per week at $11.00 per hour as a medical billing clerk. She also receives $3,200.00 per month ($38,400.00 per year) in unallocated spousal and child support from Husband. Given the party's incomes and the fact that they share custody of their only child on a 50/50 basis, between $950.00 to $1,000.00 per month is a fair estimate of what Husband's child support obligation alone would be to wife.

Husband's income and earning capacity far exceeds Wife's even if her earning capacity, given her education and experience in accounting and running a business, is greater than her current income from her recently acquired employment in medical billing.

In light of the post-secondary education in accounting Wife obtained prior to the marriage, as well as her experience working as an accountant for a string of gas stations in Mexico and thereafter helping her Husband run a business, the Court surmises that she should have been able to find appropriate employment in the area of accounting or related field without significant further education or training that paid more than $11.00 per hour and perhaps as much as $16.00 per hour. Even if that is not so, she has had over 4 years since the parties' separation to seek same, but in that time has only obtained a certification in the area of medical billing pursuant to a two year program.

Furthermore, according to the 2015 Federal Poverty Guidelines, Wife's monthly earned income of $1,916.00, plus monthly child support of $950.00, equals $2,866.00 monthly income, which is more than twice the $1,327.00 per month poverty guideline for a 2 person family/household. (The 2015 U.S. Poverty Guideline for a 1 person family /household is $11,770.00 per year; Wife's yearly income of $23,000.00 is nearly twice that guideline amount).

**REMAINING ALIMONY FACTORS**

At the time of the Master's hearing, Husband was 40 years old and Wife was 43 years old. Both of them are in good health.

Neither Husband nor Wife has any expectancies or inheritances. They were married on December 30, 2004 and separated on September 4, 2009; thus, they spent 56 months living together as Husband and Wife and, as of June 2016, had spent 70 months married to each other, but living separate and apart from each other.

The parties are the parents of a child born in 2006, They share custody of this child on a 50/50 basis, so their respective earning power, expenses and financial obligations by reason of their serving as the custodian of their child will be equally affected.

Wife contends that because of the shared custody with their minor child, she cannot relocate back to either Mexico or Southern California where she might have a better chance at greater earnings. However, she failed to present any evidence that indicates that she would have more opportunities for employment in either Southern California or Mexico. Moreover, there was no evidence presented as to what employment Wife would pursue in either of those locations.

Husband has a 14 year old child from a prior relationship for whom he pays support, and Mother has sole custody of 14 year old twins from a prior relationship, but receives no support for them from their father and never has. While Mother is the sole custodian of those 14 year old twins, the support of them is not [Husband's] legal obligation and, therefore, should not militate in favor of an award of alimony to Wife.

Given Husband's income at the outset of the party's marriage and the time during their marriage when they struggled to get their business off the ground, it is reasonable to conclude that prior to their move to Pennsylvania they had a fluctuating, but essentially middle class standard of living which rebounded nicely shortly before their separation when Husband began working for his present employer.

Wife contends that her moving with Husband from Southern California to York, PA so that he could take his current job has contributed to his increased earning power. However, this contention, even if true, does not outweigh the other factors discussed in this order that militate against an award of alimony

- 10 -

to Wife. Moreover, Husband had obtained his formal education and had a high-paying job prior to the parties' marriage.

Neither Husband nor Wife has significant assets or liabilities, other than the $10,900.00 lump sum payment to be made from Husband to Wife, and the 95% portion of the marital estate ($48,640.00 of $51,223.00) the Master recommended be awarded to Wife. Furthermore, the record does not reveal any specific or significant amount of property that either Husband or Wife brought to [the] marriage.

Regarding the relative needs of the parties, Wife claims expenses of over $3,500.00 per month. However, many of those expenses pertain to support of Wife's 14 year old twins. As previously noted, the legal duty to support those two children falls on their father and Wife, not on Husband.

In regard to marital misconduct of either of the parties during the marriage, while Wife contends that Husband must have started his relationship with his paramour prior to separation, there is no evidence of record that supports that contention, making it nothing more than mere speculation.

## CONCLUSION

The Master did not err in recommending that Wife not be awarded alimony.

Wife has been receiving spousal support from Husband for over 5 years, which is longer than the time the parties lived together as Husband and Wife. Furthermore, Wife has significant education and work experience in accounting, and even if this education and experience was not sufficient to obtain appropriate employment after the parties separated, she has had over 5 years since the separation to acquire an appropriate employable skill.

Wife is in her mid 40's, is in good health and can be expected to continue to receive support from Husband for their minor child. While Wife does have sole custody of 14 year old twins she has from a prior relationship, Husband should not be ordered to pay her alimony based in whole or in part on the expenses she claims she incurs as a result of her being the sole support for her twins. Husband is not legally obligated to support

her children from a prior relationship, and he should not be indirectly required to do so via court-ordered alimony.

Husband's income and earning capacity are significantly higher than Wife's, but alimony is a secondary remedy whose primary purpose is to insure that the reasonable needs of a spouse who cannot support himself/herself through appropriate employment are met. In fact, Wife is working full time, and her income from that job plus the child support she can be expected to continue to receive from Husband will amount to approximately $35,000.00 per year income which is more than twice the 2015 U.S. Poverty Guidelines for a 2 person family/household. (For a 4 person family/household consisting of Wife, the party's Child, and Wife's twins, the 2015 guideline is $24,250.00 per year which is well below Wife's $35,000.00 per year income.)

While Wife's standard of living will be lower than that she enjoyed during the four years Husband and she were married and living together, that factor and the disparities in the party's incomes and earning capacities are outweighed by the other factors discussed in this order.

We also note that Wife brought no property with her into the marriage and whatever property Husband brought into the marriage was lost in the party's ill-fated business venture. Moreover, the Master has recommended that Wife be awarded 95% of the marital assets ($48,640.00) and that Husband pay Wife a lump sum payment of $10,900.00 to offset a pension he has retained. The sum of these two items is $59,540,00, which is equal to approximately 3 years and 8 months of spousal support at the rate of $1,300.00 per month.

The Court did consider all the statutory factors regarding alimony, but only discussed in detail in this order those that, given the circumstances of the case, militated for or against an award of alimony to Wife.

Order, 7/24/15, at 3-7.

After review, we cannot agree with Wife that the trial court solely relied on the short duration of the marriage as the basis for denying

- 12 -

alimony. Moreover, we decline Wife's invitation to reweigh the evidence relevant to the section 3701(b) factors as that is not the role of this Court. *See Gates*, 933 A.2d at 105 (stating that it is improper for this Court reweigh the evidence when reviewing the financial aspects in a divorce proceeding).[2] Thus, the duration of the marriage was considered insofar as Husband paid spousal support for more than five years after separation, which was longer than the fifty-six months that the parties lived together during the marriage. We find no error. While the duration of the marriage was weighed, it was not the sole focus of the trial court's decision. The trial court thoroughly addressed all relevant factors including the seventeen considerations enumerated in 23 Pa.C.S. § 3701(b), and we discern no abuse of discretion. Accordingly, we conclude that Wife is entitled to no relief, and we affirm the divorce decree which made final the order denying Wife's exceptions.

_____

[2] The "reweighing" analysis in *Gates* was conducted regarding 23 Pa.C.S. § 3502 and equitable distribution factors. However, we conclude that it is apt here as well.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/2016