J. A20004/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHELLE L. RYBNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JACOB RYBNER, | : | No. 1790 MDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Decree Entered September 26, 2018,
in the Court of Common Pleas of Lancaster County
Civil Division at No. CI-10-03913

BEFORE:  GANTMAN, P.J.E., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:  **FILED: MARCH 18, 2020**

Jacob Rybner ("Husband") appeals from the September 26, 2018 divorce decree entered in the Court of Common Pleas of Lancaster County. We affirm.

The record reflects that Husband and Michelle Rybner ("Wife") married on December 2, 2000.  Wife filed for divorce on April 15, 2010.  The trial court appointed a divorce master with respect to Wife's claims for equitable distribution, alimony,[1] attorney's fees, costs, and expenses.  The divorce master held hearings on April 27, 2016 and October 19, 2016.  On the date of the first hearing, both parties were 40 years old.  Wife was a college student and worked as a house cleaner.  Husband was self-employed and worked as

---

[1] The record reflects that Wife subsequently abandoned her claim for alimony. (**See** notes of testimony, 4/27/16 at 73-74.)

a real estate developer, constable, and used car dealer. The parties had three

children born of the marriage, who were then 15, 12, and 10 years old.

The divorce master filed her report on January 16, 2018. The

trial court summarized the report, which divided the marital property into

eight categories, as follows:

> 1. *Husband's Real Estate Businesses*
>
>    The Divorce Master valued Husband's real estate businesses at $202,369.07. This was based upon the evidence that could be retrieved and presented to the Divorce Master. The Divorce Master noted that it was incredibly difficult for her to obtain clear, verifiable information about these businesses from Husband because he ignored both her and Wife's counsel's request for documentation to support the dealings of these businesses. Information received was often later contradicted by Husband, thus adding confusion. Wife did present testimony to support Husband's many large cash transactions which indicated to the Divorce Master that Husband had access to greater financial assets than he alleged prior. There was no formal business valuation introduced by either party, only convoluted and contradictory testimony, much of which relied on the credibility of Husband. The Divorce Master arrived at the $202,369.07 number as Husband's portion of the real estate businesses because that was the amount he paid to his brother, Leon, when they ceased joint business operations.
>
> 2. *Proceeds from the Sale of the Marital Residence at 1939 [Kendale] Place*
>
>    The marital residence was sold on February 14, 2014, and each party received approximately

$12,708.14 from the proceeds of the sale for a total of $25,416.29. The Divorce Master recognized that Husband again desired to have these amounts offset by the "losses" he suffered on this property, though Husband did not present adequate evidence or testimony to establish any valid losses sustained. Further, this property was owned by Husband and Wife and not by any of the businesses so any housing expenses or mortgage payments would not be deducted from the proceeds of the sale to determine net equity.

3. *Proceeds from the Sale of the Marital Property located at Old Delp Road*

When this property was sold the proceeds deposited into the escrow accounts were in the amount of $206,833.49 and approximately $23,180.00. These amounts are what the Divorce Master used for valuation of the marital property for equitable distribution. The Divorce Master recognized that Husband desired to have these amounts offset by the "losses" he suffered on this property, though Husband did not present adequate evidence or testimony to establish these alleged losses.

4. *Rent Received from Marital Property located in East Brunswick, New Jersey*

The parties owned the Old Bridge Turnpike property in East Brunswick for several years. This property was originally their marital residence and then was later intended to be developed for a profit. The nature of the ownership of this property was unclear, whether it was a personal or business property. The property was owned jointly by Husband and Wife and Husband received rental income of approximately $2,000 a month which he did not share with Wife. In November 2015, Husband stopped paying the mortgage and taxes on the property. Nevertheless, Husband continued to

receive rental income from November 2015 until February 2017, which amounts to $32,000. Husband claims that during the recent years, the property maintenance costs exceeded the rental income; thus, he should be credited with the losses during those years. Husband did not produce evidence to adequately substantiate these losses. Conversely, substantial evidence was presented that Husband received rental income from this marital property. The Divorce Master divided the $32,000 equally between Husband and Wife in her recommended distribution.

5. *Real Estate Located in East Brunswick, New Jersey*

The Divorce Master used the amount of $100,000 as the marital value of the Old Bridge Turnpike property in East Brunswick in light of the parties' testimony that the property would be sold to Serge Shapiro for $100,000 to extinguish an outstanding loan Serge had with Husband. The nature of the ownership of this property was unclear, whether it was a personal or business property. It was deeded in Husband and Wife's name, but the mortgage was in Husband's name alone. The property was bought in 2004 for $650,000.00 with a plan to develop the property to make a million dollars. Husband never obtained the necessary approvals to develop the land. As of February 2016, the mortgage balance was $354,800.00. After the cost of sale and assuming that they could sell the property for appraisal value, the net equity would be $249,700.00. Husband testified to massive losses he sustained on the property, but did not produce adequate evidence for the Divorce Master to adequately determine those loss amounts. When asked what he would like the Court to do in equitable distribution, Husband replied, "the property in Jersey, I'd like to write off to Serge for the money that's owed to him and wish him good

> luck with it." Accordingly, the Divorce Master set the marital value of the East Brunswick property at $100,000.00, which is the amount that Husband testified he owed to Serge.

Trial court opinion, 9/26/18 at 1-5 (record citations omitted). The divorce master identified the remaining three categories of marital property subject to equitable distribution as the marital portion of Husband's whole life insurance policy, a 2005 Dodge Caravan, and the parties' personal property, which were all determined to have no value for purposes of equitable distribution. (**Id.** at 5.)

The divorce master valued the marital estate at $589,798.85.[2] The divorce master recommended that Husband be awarded the marital value of the real estate businesses in the amount of $202,369.07 and the parties' New Jersey real estate valued at $100,000 and that Wife be awarded the proceeds of the sale of the marital property located at Old Delp Road, totaling $230,013.49. The divorce master recommended an equal division of the proceeds from the sale of the marital residence at Kendale Place and the rent received from the marital property located in New Jersey, which amounted to $28,708.15 to each party. In order to effectuate an equitable distribution of 53 percent of the marital estate to Wife and 47 percent to Husband, the divorce master recommended that Husband make a $50,000 cash payment to

---

[2] We note that the divorce master also included other debts and credits that did not affect the value of the marital estate for equitable distribution purposes and that are not germane to this appeal.

Wife so that Husband would receive $281,077.21 and Wife would receive $308,721.64. The divorce master also recommended that Husband pay $15,000 toward Wife's attorney's fees and pay the fees and costs associated with the divorce action.

Husband filed exceptions to the divorce master's report. Following a hearing, the trial court denied the exceptions, affirmed and adopted the divorce master's report, and entered the divorce decree. Husband filed a timely appeal. The trial court ordered Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Husband timely complied. The trial court filed a Rule 1925(a) opinion that relied upon the opinion it filed with the divorce decree on September 26, 2019.

Husband raises the following issues for our review:

> [1.] Whether the multiple factual errors made by the Lower Court establishes [sic] its racial bias and prejudice against Husband?
>
> [2.] Whether the Lower Court erred in finding that the record supports the determination of the value of the marital estate?
>
> [3.] Whether the Lower Court erred in not including the $25,000 payment in the Equitable Distribution analysis?
>
> [4.] Whether the Lower Court erred in awarding attorney's fees when the Husband was forced to provide discovery materials for five (5) years including multiple requests for the same documents and information?

Husband's brief at 2.

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Balicki v. Balicki*, 4 A.3d 654, 662-663 (Pa.Super. 2010) (internal citations, quotation marks, and brackets omitted).

At the outset, we note that Husband's brief is largely unintelligible, and we could dismiss this appeal on that basis. *See* Pa.R.A.P. 2101 (authorizing dismissal of an appeal when an appellant submits a substantially defective brief). To add to the brief's lack of clarity, Husband most often refers to the divorce master as the "lower court" and appears to challenge her factual findings when this appeal lies from the trial court's equitable distribution order. Despite the defects in Husband's brief, because we are able to discern Husband's issues, we will address them on the merits.

In his statement of questions presented, Husband first claims that the "multiple factual errors made by the Lower Court establishes [sic] its

*racial* bias and prejudice against Husband." (Husband's brief at 2 (emphasis added).) In the argument section of his brief on this issue, Husband complains that "[t]he numerous errors in the Opinion and Order establishes [sic] the Lower Court's intent to discriminate against the Husband based on his *religion*." (Husband's brief at 4 (emphasis added).) Husband abandons his racial bias claim and levels his bald allegation of religious bias against the trial court and the divorce master. A review of Husband's Rule 1925(b) statement reveals that Husband failed to raise any claims of bias – racial, religious, or otherwise. Therefore, Husband waives all bias claims on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii) (setting forth the rule that issues not included in an appellant's Rule 1925(b) statement are waived). Notwithstanding waiver, we note that Husband entirely fails to substantiate either of these serious claims with any record support. Our thorough review of the record reveals that there is not one scintilla of evidence to support a claim of racial, religious, or any other bias by either the trial court or the divorce master.

Husband next complains that the record fails to support the valuation of the marital estate. Once again, Husband baldly asserts that the "valuation demonstrates the bias of the Lower Court against Husband." (Husband's brief at 9.) Husband then accuses the "Lower Court" of "'double dipping' the value of the business and real estate assets." (*Id.*) Husband claims that "[a]ssuming the martial [sic] business is worth $202,369.07, the value for that business must be used to purchase subsequent properties owned by the

parties" and the "Lower Court does not establish any source of the funds to purchase" the Kendale Place and Old Delp Road properties. (**Id.**) In this argument, Husband baldly claims that the down payments for the Kendale Place and Old Delp Road marital properties should be deducted from the marital value of these properties and credited to his real estate businesses. Husband raises this issue for the first time on appeal and, therefore, waives the issue on appeal. Pa.R.A.P. 302 (stating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").[3]

Husband next complains that the "Lower Court failed to take into account Husband's direct payment of $25,000 to Wife" . . . "in the Equitable Distribution analysis." (Husband's brief at 10.) The record belies Husband's claim. The record reflects that, pursuant to a post-nuptial agreement entered into between Husband and Wife, Wife received an advanced distribution of $25,000 from an escrow account that held the proceeds of the sale of the Old Delp Road marital property, which proceeds were awarded to Wife. (Decree, 9/26/18 at 2 & n.1.) As aptly noted by the trial court, "Husband is mischaracterizing this as a direct payment" that he made to Wife. (Trial court opinion, 9/26/18 at 15.) Additionally, our review of the record reveals that

---

[3] We note that when this matter was before the divorce master, Husband baldly claimed that what he characterized as "losses" on marital property, which included mortgage payments, real estate taxes, household expenses, and fixtures, such as toilets, should be deducted from the value of the marital property and credited to his real estate businesses. (**See** master's report, 1/16/18 at n.7, 8 n.8; **see also** notes of testimony, 4/27/16 at 169-188.)

the divorce master noted the advanced distribution made to Wife in her report. (Master's report, 1/16/18 at 10 & n.1.)

Husband finally complains that Wife is not entitled to an award of counsel fees because she engaged in "vexatious and abusive discovery." (Husband's brief at 11.)

> Inasmuch as appellant challenges the award of counsel fees, our standard of review is, once again, an abuse of discretion. Furthermore:
>
> > The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be on par with one another.
> >
> > Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.
>
> Counsel fees are only to be awarded upon a showing of need. In essence, each party's financial considerations dictate whether such an award is appropriate.

*Gates v. Gates*, 933 A.2d 102, 109 (Pa.Super. 2007) (internal citations and quotations omitted).

Husband takes a kitchen-sink approach to his argument on this issue. Husband first claims, without any supporting record references, that Wife is not entitled to counsel fees because she engaged in "vexatious and abusive

discovery." (Husband's brief at 11.) Husband waives this issue on appeal for failure to comply with procedural rules requiring the brief to contain citations to the record. Pa.R.A.P. 2119; *see also Irwin Union Nat'l Bank & Trust Co. v. Famous*, 4 A.3d 1099, 1103 (Pa.Super. 2010), *appeal denied*, 20 A.3d 1212 (Pa. 2011) (reiterating that where deficiencies in the brief hinder meaningful appellate review, issues are waived, and noting that it is not this court's responsibility to comb through the record to find record support for a claim). Notwithstanding waiver, we note that the divorce master summarized what the record reflects:

> Husband's behavior during the pendency of the divorce proceedings was obdurate and vexatious. Husband's behavior caused delay, frustrated the divorce proceedings, and created unnecessary additional expense. The docket demonstrates the necessity of repeated attempts to return to Court to request the Court direct discovery and compliance with previous motions and direction. Throughout the hearing, the Master continued to be frustrated by Husband's lack of ability or willingness to provide the Court with information which would allow the Court to make sense of Husband's personal and business dealings and accountings, as stated multiple times in this Master['s] Report.

Master's report, 1/16/18 at 32 (record citations omitted).

Husband next erroneously, and without citation to legal authority, claims that his payment of spousal support "over a seven year period of approximately $400.00 per month" was "designed to level the playing field between the parties and allow the Wife to have access to counsel and lifestyle enjoyed during marriage." (Husband's brief at 12.) Husband waives this claim

on appeal for failure to cite to legal authority. *See Estate of Haiko v. McGinley*, 799 A.2d 155, 161 (Pa.Super. 2002) (reiterating that an appellant must support each question raised by discussion and analysis of pertinent authority; absent reasoned discussion of law in an appellate brief, this court's ability to provide review is hampered, necessitating waiver on appeal). Despite waiver, we note that, contrary to Husband's assertion, the purpose of spousal support is to assure a reasonable living allowance to the party requiring the support. *Hainaut v. Hainaut*, 599 A.2d 1009, 1011 (Pa.Super. 1991). Conversely, "the purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage." *See Gates*, 933 A.2d at 109.

Husband finally complains that

> [t]he determination of Husband's income by the Lower Court is simply conjecture and speculation. The lifestyle assigned to Husband is based simply on the biased belief of the Lower Court. Any comparison of Husband and Wife's lifestyle and/or earning capacity should only be completed after a new hearing to properly determine his income and lifestyle.

Husband's brief at 13. Husband waives these final claims for failure to develop a legal argument capable of any meaningful appellate review. *See Butler v. Illes*, 747 A.2d 943, 944-945 (Pa.Super. 2000) (holding appellant waived claim where she failed to set forth adequate argument concerning her claim on appeal; argument lacked meaningful substance and consisted of mere

conclusory statements; appellant failed to explain cogently or even tenuously assert how trial court abused its discretion or made error of law).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>03/18/2020</u>